STATE OF VERMONT

SUPERIOR COURT
CHITTENDEN Unit

CIVIL DIVISION
Docket No. _____

1:12-cv-16

ROBERT S. MELILLO and ARTHUR
MAYO, JR., on behalf of themselves and
all others similarly situated

      Plaintiffs,

      vs.

BUILDING PRODUCTS OF CANADA
CORP.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CLASS ACTION COMPLAINT**

**RECEIVED**
**U.S. DISTRICT COURT**

FEB 0 9 2012

**RUTLAND, VT**

## NATURE OF THE CASE

1.     This is a putative class action on behalf of Robert S. Melillo and Arthur

Mayo, Jr., ("Plaintiff" or "Plaintiffs") and a class of all others similarly situated against

Building Products of Canada Corp. ("Defendant"), the manufacturer of a variety of

organic roofing shingles used for commercial, industrial, institutional and residential

roofing applications.

2.     Defendant's organic shingles are plagued by design flaws that result in

cracking, buckling, curling and degranulation.  Yet Defendant continues to sell them to

the public and continues to make false representations and warranties, despite the fact

that the organic shingles are defective and will eventually fail, causing property damage,

and costing consumers substantial removal and replacement costs.

1



3.  This class action seeks damages, injunctive relief, costs, attorneys' fees, and other relief as a result of Defendant's willful, wanton, reckless, and/or grossly negligent conduct in causing consumers' homes to be in a dangerous, defective, unsafe, and unfit condition for habitation.

## PARTIES

4.  Plaintiff Robert S. Melillo is a resident of Vermont with an address located in Colchester, Vermont. Plaintiff Melillo purchased defective organic shingles from Defendant in 2002.

5.  Plaintiff Arthur Mayo, Jr., is a resident of Massachusetts with an address located in Sharon, Massachusetts. Plaintiff Mayo purchased defective organic shingles from Defendant in September, 2000.

6.  Defendant Building Products of Canada Corp. ("BP") is a Canadian corporation with its principal place of business at 9510 St. Patrick Street, LaSalle, Quebec, H8R 1R9, Canada. BP is authorized to transact business in the state of Vermont and is currently doing so. According to its website, BP advertises, markets and sells organic shingles, at a minimum, in the following American states: Michigan, New York, New Hampshire, Maine, Vermont, Massachusetts, Rhode Island, Connecticut, Washington, Utah, Montana, North Dakota and Idaho. BP at all times relevant hereto, was engaged in the design, manufacture, marketing and sale of organic shingles that have been installed in numerous homes, offices, buildings, and other structures throughout the United States, including Vermont.

## FACTUAL ALLEGATIONS

2

7.      Upon information and belief, Defendant is, and at all times relevant hereto was, engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing a variety of organic shingles, including but not necessarily limited to: Eclipse GL, Everest (East), Everest (West), Harmony (West), Mystigue, Dakota (East), Dakota (West), Mirage GS (East), Yukon SB (East), Yukon SB (West), Rampart (East), Rampart (West), Eclipse, Eclipse H/R, Tradition, Harmony, Harmony H/R, Mirage, Roofmaster, Rampart, Tite-Lok, Esgard Pro, Standard, Citadel, Tite-On, Lo/Slope.

8.      Defendant warrants its organic shingles for 20, 25, 30, 35, 40, 50 or lifetime terms.  The warranties purport to provide reimbursement for some, if not all, of the costs associated with repairing and/or replacing defective organic shingles.

9.      Customers of Defendant's organic shingles make purchasing decisions based in part and in reliance upon the information presented by the company on its website, marketing literature, advertisements and warranties.

10.     Defendant's warranties suggest that "BP roofing shingle warranties are widely recognized as the fairest and most comprehensive available anywhere" and that they have the "fairest, most comprehensive warranties available."

11.     Defendant represented on its website that:

Building Products of Canada has been producing quality home building and home renovation products for generations. The BP brand reflects an almost legendary craftsmanship that goes back nearly 100 years.
...
It is producing quality products without compromise. In the trade, BP products are well known for their quality. The quality of our finished products begins with the quality of the materials that go into them.

3

12.     Defendant has knowingly and intentionally concealed, and has failed to disclose that --notwithstanding statements on its website, brochures, advertisements and warranties—its organic shingles routinely deteriorate by cracking, curling and degranulating far in advance of the expiration of warranty periods.  Indeed, Defendant's organic shingles have deteriorated and will continue to deteriorate at a rate which clearly demonstrates their lack of durability and resiliency.

13.     Similarly, Defendant has knowingly and intentionally concealed, and has failed to disclose, that they actually had no intention of providing the services set forth in its warranties.

14.     Defendant has had notice of the deficiencies described herein and has been routinely notified by their customers that the organic shingle products are/were defective and not functioning as advertised.

15.     Ignoring customer complaints and concerns, Defendant has failed to implement any changes to its organic shingle products or warranty procedures to remedy the defects associated with their products.

16.     The following represents a small sampling of internet postings by BP products purchasers' general frustrations with the defective organic shingles:

> *
>
> IN 1998 we had our roof redone with shingles by BP Canada. The work was done by a licensed roofing contractor here in Connecticut. Twelve years later we noticed the shingles had begun to crack and peel. We spoke to the roofing contractor who installed the shingles. He said he had heard similar complaints from two other former customers who had shingles on their roof about as long as ours. They submitted complaints and were awarded prorated settlements.
>
> *

4

I live in north Mississippi. My house was built in 2001 and I had a 15 year shingle roof installed. Granule shedding was epic. Within six years the edges were curling and wind of any magnitude would break off shingles. I located and tarred a leak in one area. Christmas Day, 2009 I woke up to four leaks in my main room. My insurance company inspected the roof and paid for a total roof failure. My research found that 30 year shingles have an expected life of
9-12 years in this area. I did what I see many others doing: I installed a metal roof. Initial cost is higher but it's a one time affair. Peace of mind is worth it!

\*

I have read all the comments and could,t agree more. Most of the producers of shingles try to glame everything they can on why their prodct failed. The people I have had al the problems with is BP. No Matter how many letters you send, they fail to reply. They are totally insencetive to ones problems. The warranty department on't devulge any information on any higer ups to contact. If you call about a claim they say it is still under review, and finally, you get the letter of warranty rejection. I fndthat there isnot enough consumer protection in these instances. If enough noise is made, perhaps something will get done.

\*

This Fall (2009) we replaced a portion of our roof shingles with "25 year" BP shingles. Even as they were being installed, there was excess granular loss - so much that they could not be stepped on while laying the next row of shingles. We contacted BP and explained the situation. They sent a representative who would not have gone up on the roof to inspect their shingles if my husband had not insisted. After providing proof of purchase to the company our claim was denied. The shingles were such poor quality I am not at all surprised to learn that there are many others whose shingles do not last more than a few years. I'm only relieved that we did not replace our whole roof with these poor quality shingles from a company that does not stand behind its product.

\*

This story is so familiar to me. I hired a reputable company to reshingle my home with 25-year BP asphalt shingles. After 8 years I started to see a lot of granules on the ground around the house. The shingles were completely worn out in many areas and needed to be replaced. BP did agree to pay the prorated cost of replacing the shingles, including labour and associated materials (felt, valleys, etc.) but only for a small percentage of the roof surface (the most badly damaged area). The reimbursement was only about 21% of the total cost. Further, they would only honour the

warranty if I reshingled using BP shingles again! I have put on 40-year fibreglass shingles and hope that they will fare better. I'm wondering if the higher levels of UV may be a factor? A builder friend of mine tells me that shingles are affected by UV radiation.

\*

Our 25 year old BP shingles are 13 years old. We sent a claim on Sept.22,09 with pictures of the roof. We had pictures of the shingles with blisters, shingles curled up, shingles with junks missing, wide spreading shingles, assorted venting and still these shingles are supposedly good and should last.
We feel that these shingles have failed because of their make up (we have a container full of pieces of shingling showing that the outer coating had come apart) and are asking for them to reconsider their decision about their quality and help us to replace them.We are confused at what could have made the decision so final without asking us for more information on the state of the roof shingling. Is there no one who could help with this by at least taking a fair look at the roof? It's ironic that the high roof with the 2 gable end vents, 2 in roof vents and eve vents,is in the worst.

\*

I have an 18 year old house that had to have BP shingles replaced after 10 years due to excessive shinking.  At the time I was extremely upset that a 10 year old house needed a new roof.  I dealt with a reputable roofer and requested a top quality shingle that would hold up well in the long term.  The roofer suggested CRC (IKO) Skyline shingles.  Over the past year I have been uncertain about how the shingles look.  The appeared to be shabby relative to other newer roofs.  Upon inspection it was discovered that the shingles were cracking.  Is this a common problem with this type of shingle?  I am disgusted that at 18 years old my house needs a 3rd roof.

\*

I received a reply from BP asking me to forward pictures of my roof inside and out, before roof was replaced and after, how many folks take pictures of the before project. I have done all that was requested, without the before picts, now I find their in box will not receive my attachment even though I have zipped the file, again requested by BP Canada, because they cannot receive files that contain more than 2 pictures.
I smell a skunk. Our shingles are less than 1 year old, fishmouthing, corners rolled up, shingles not staying down, these are BP Rampart shingles, 2 tone black, there is no 2 town anything, these are grey. Their response was there are color variations in all their colors, this is not what the salesman told us.

\*

> I think I know the answer but has anyone successfully made a claim under a shingle warranty?
> Many of our 30 year BP shingles have curled up and died after 9 years and I was wondering if it was worth trying to make a claim with the manufacturer. According to the warranty chart we are entitled to 73.33% after 9 years but I expect the manufacturer is well versed in exercising the various exclusion clauses in the warranty.

**Inadequate Testing of Defendant's Organic Shingles**

17.     Upon information and belief, Defendant did not test the organic shingles in their anticipated environments before selling those organic shingles to the public.

18.     Upon information and belief, Defendant conducted inadequate testing and quality control on the organic shingles and failed to test for things that they knew or should have known would lead to premature failure of the organic shingles.

19.     Upon information and belief, Defendant failed to investigate or test whether various conditions would lead to premature failure of the organic shingles.

**Defendant's Marketing Omissions**

20.     Defendant advertised that the organic shingles were safe, reliable and worry-free despite failing to test and determine the reliability of its product when used in the real world.

21.     Defendant represented on its website, regarding various makes of shingles:

> At BP, we understand that your home is your castle – your refuge from the harsh realities of the outside world: temperature, wind, weather and noise.
>                      ...
> BP offers you the best shingle choice in the industry.
>                      ...
> ...providing curb appeal, long-term durability and proven performance in all kinds of weather.

7

...

> Strong, durable and handsome, this square-cut design provides
> extraordinary protection in the toughest weather conditions as well as a
> wide selection of popular colors from which to choose.

22.     Defendant's marketing literature concerning Dakota organic shingles, in part, states "[a] performance you can count on for 25 years means that your new Dakota roof will protect your investment for many years to come."

23.     Defendant and its authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing suppliers, builders, and consumers to purchase and install the organic shingles in residential and commercial structures in the State of Vermont and elsewhere. However, Defendant knew that these misrepresentations were not true and that the organic shingles were defective and would not function as promised.

24.     Defendant also made numerous material omissions in its literature and uniformly withheld important information relating to the design, reliability and performance of the organic shingles.

25.     Had Defendant not withheld and omitted important information about the design, reliability and performance of the organic shingles, Plaintiffs and the members of the Class would not have purchased and/or installed them in their properties.

**Plaintiffs' Organic Shingles**

26.     Plaintiff Melillo, through his contractor, had BP "Eclipse" 35 year organic shingles installed on his house in 2002.  Plaintiff Melillo's contractor purchased the organic shingles believing them to be a quality product, free of defects.

8

27.    In 2009, Plaintiff Melillo learned that his organic shingles were deteriorating in numerous locations.  On August 28, 2009 Plaintiff Melillo filed Warranty Claim W097749 with Defendant.  After many months and repeated efforts by Plaintiff Melillo to get Defendant to stand by its warranty, Defendant finally offered to pay Plaintiff $250 on March 16, 2010 in exchange for Plaintiff Melillo executing a full and final release of any claims.  Plaintiff Melillo refused Defendant's offer as it was wholly inadequate and did not comply with the promises made by Defendant in its warranties and advertising literature.  Upon inspection by a roofing professional in June 2010, it was concluded that Plaintiff Melillo's organic shingles were defective.

28.    Plaintiff Mayo, through his contractor, had BP "Eclipse" 30 year organic shingles installed on his house in September 2000.  Plaintiff Mayo's contractor purchased the organic shingles believing them to be a quality product, free of defects.

29.    In 2009, Plaintiff Mayo learned that his organic shingles were deteriorating in numerous locations.  On May 16, 2010 Plaintiff Mayo filed Warranty Claim W10B801 with Defendant.  After many months and repeated efforts by Plaintiff Mayo to get Defendant to stand by its warranty, Defendant wrote to Plaintiff Mayo on August 13, 2010 and completely denied his claim, offering no compensation for the defective shingles.

30.    Like the Plaintiffs, other members of the Class also purchased defective organic shingle products and warranties from Defendant who, upon information and belief, did not repair or replace the organic shingle products in accordance with the terms of its warranties.

9

31.     Plaintiffs and members of the Class have suffered damages as a result of

Defendant's deceptive practices, including but not limited to the fact that their roofs have

been damaged and the value of their homes have been diminished.  While Plaintiffs and

the Class are forced to repair and/or replace Defendant's defective organic shingle

products, they were not reimbursed for the costs associated with this exercise, in

contravention for the terms of Defendant's warranties.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs seek to bring this case as a class action, under Vermont Rules of

Civil Procedure 23, on behalf of themselves and all others similarly situated.  The

proposed Class is defined as:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings or other structures physically located in
> the United States, on which Building Products of Canada Corp.
> organic shingles are or have been installed since 1986.  Building
> Products of Canada Corp. organic shingles are defined to include
> without limitation all organic shingles manufactured or distributed
> by Defendant and include, without limitation, the following brand
> names: Eclipse GL, Everest (East), Everest (West), Harmony
> (West), Mystigue, Dakota (East), Dakota (West), Mirage GS (East),
> Yukon SB (East), Yukon SB (West), Rampart (East), Rampart
> (West), Eclipse, Eclipse H/R, Tradition, Harmony, Harmony H/R,
> Mirage, Roofmaster, Rampart, Tite-Lok, Esgard Pro, Standard,
> Citadel, Tite-On, Lo/Slope.      Excluded from the Class are
> Defendant, any entity in which Defendant have a controlling interest
> or which has a controlling interest of Defendant, and Defendant's
> legal representatives, assigns and successors.  Also excluded are the
> judge to whom this case is assigned and any member of the judge's
> immediate family.

33.     In the alternative, Plaintiffs bring this case as a class action,

under Vermont Rules of Civil Procedures 23, on behalf of themselves and all

others similarly situated in the New England States (aka Maine, Connecticut,

New Hampshire, Massachusetts, Rhode Island and Vermont) as members of a

proposed class, defined as follows:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings or other structures physically located in
> the New England States, on which Building Products of Canada
> Corp. organic shingles are or have been installed since 1986.
> Building Products of Canada Corp. organic shingles are defined to
> include without limitation all organic shingles manufactured or
> distributed by Defendant and include, without limitation, the
> following brand names: Eclipse GL, Everest (East), Everest (West),
> Harmony (West), Mystigue, Dakota (East), Dakota (West), Mirage
> GS (East), Yukon SB (East), Yukon SB (West), Rampart (East),
> Rampart (West), Eclipse, Eclipse H/R, Tradition, Harmony,
> Harmony H/R, Mirage, Roofmaster, Rampart, Tite-Lok, Esgard Pro,
> Standard, Citadel, Tite-On, Lo/Slope.   Excluded from the Class are
> Defendant, any entity in which Defendant have a controlling interest
> or which has a controlling interest of Defendant, and Defendant's
> legal representatives, assigns and successors.  Also excluded are the
> judge to whom this case is assigned and any member of the judge's
> immediate family.

34.     Plaintiffs reserve the right to re-define the Class prior to class certification.

35.     The number of persons who are members of the Class described above are

so numerous that joinder of all members in one action is impracticable.

36.     Questions of law and fact that are common to the entire Class predominate

over individual questions because the actions of Defendant complained of herein were

generally applicable to the entire Class.  These legal and factual questions include, but are

not limited to:

a)  whether the organic shingle products are defective;

b)  whether Defendant knew or should have known of the defective nature of the

   organic shingle products;

c) whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable care in the design, manufacture and marketing of the organic shingle products;

d) whether Defendant breached this duty;

e) whether the organic shingle products failed to perform in accordance with the reasonable expectations of ordinary consumers;

f) whether the organic shingle products failed to perform for the time warranted by Defendant;

g) whether the warranties are unconscionable and unenforceable; and

h) whether Plaintiffs and the Class suffered damages as a result of Defendant's conduct.

37.    All questions as to the representations and publicly disseminated advertisements and statements attributable to Defendant at issue herein are similarly common. A determination of Defendant's knowledge regarding the misleading and deceptive nature of the statements made in its website, brochures, advertisements and warranties and its breaches of contract will be applicable to all members of the Class. Further, whether Defendant's violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendant acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to the Class.

38.    Plaintiffs' claims are typical of the members of the Class because Plaintiffs purchased defective organic shingles from Defendant and then installed them in

12

his home.  The organic shingles malfunctioned before the expiration of the applicable warranty period.  Plaintiffs, like the Class, have suffered damages associated with the use of Defendant's defective products.

39.     Plaintiffs will fully and adequately represent and protect the interests of the Class because of the common injuries and interests of the members of the Class and the singular conduct of Defendant that is or was applicable to all members of the Class. Plaintiffs have retained counsel who is competent and experienced in the prosecution of class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those of the Class they seek to represent.

40.     A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

41.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendant under the laws alleged herein.

42.     The claims of the Class may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3).  The members of the Class also seek declaratory and injunctive relief but also seek sizeable monetary relief.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATION

43.     Because the defects in the organic shingles are latent and not detectable until manifestation, Plaintiffs and the Class members were not reasonably able to discover their organic shingles were defective until after installation, despite their exercise of due diligence.

44.     Defendant knew that the organic shingles were defective prior to the time of sale, and concealed that material information from Plaintiffs and all consumers.

45.     As such, any applicable statutes of limitation have been tolled by Defendant's concealment of material facts and Defendant are estopped from relying on any such statutes of limitation.

### FIRST CLAIM FOR RELIEF
### (Vermont's Consumer Fraud Act)

46.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

47.     Plaintiffs and the Class members purchased Defendant's organic shingle products primarily for personal, family, and/or household purposes.

48.     Vermont's Consumer Fraud Act, 9 V.S.A. §§ 2451, et seq. makes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful.

49.     Defendant's affirmative misrepresentations within its advertisements of its organic shingle products and its failure to notify purchasers of the defects of its organic shingle products and of the true nature in which it implements its warranty process took place within the State of Vermont and constitute violations Vermont's Consumer Fraud Act, 9 V.S.A. §§ 2451, et seq.

14



50.     The Vermont Consumer Fraud Act is applicable to the claims of the Class because the conduct of Defendant, which constitutes a violation of the statute, occurred within the State of Vermont.

51.     Defendant intended that Plaintiffs and the Class members would rely on the false information or deceptive practice so that they would purchase Defendant's organic shingle products and increase the consumption of Defendant's products. Defendant misled the Plaintiffs and Class.

52.     Had Defendant disclosed this material information regarding its organic shingle products to Plaintiffs and the other members of the Class, they would not have purchased the organic shingles.

53.     As a result of the nature of Defendant deceptive conduct, Plaintiffs and the Class members suffered pecuniary loss as set forth in greater detail above.  A finding that Defendant conduct violated the law will also operate as a finding that each and every member of the Class suffered pecuniary loss.

54.     The conduct of the Defendant described herein was knowing, willful and intentional, and constitutes the employment of fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice upon Plaintiffs and the Class members within the meaning of the Vermont's Consumer Fraud Act.

55.     By falsely representing that Defendant's organic shingle products were free of defect, despite knowing that this was untrue, Defendant acted maliciously toward Plaintiffs and members of the Class, and also acted with intentional or, at a minimum, reckless disregard of their rights.

15

56.     Defendant's conduct described in this Complaint was not isolated or unique to Plaintiffs but was widespread, affecting thousands of consumers, and was a regular and intended business practice of Defendant, which was instituted and implemented with a view towards unfairly profiting at the expense of Defendant's consumers.

57.     Defendant had special knowledge of material facts to which Plaintiffs and the Class members did not have access, and, therefore, had a duty to disclose these facts to the other party so as to prevent its statements from being misleading.

58.     Pursuant to Vermont's Consumer Fraud Act, and as a result of Defendant's bad faith conduct, Plaintiffs and the Class members are entitled to monetary damages.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

59.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

60.     During the Class Period, Plaintiffs and Class members, upon purchasing Defendant's organic shingles, entered into a contract and warranty agreement with Defendant.

61.     The Defendant has uniformly breached its contracts and warranty agreements with Plaintiffs and the members of the Class by failing to supply organic shingle products that were of merchantable quality and fit for the use for which they were intended and by failing to repair and/or replace defects in the organic shingles.

62.     As a proximate result of the aforementioned wrongful conduct and breach committed by Defendant, Plaintiffs and the Class members have suffered and will

continue to suffer damages and economic loss in an amount to be proven at trial. Plaintiffs and Class members are entitled to damages and injunctive and declaratory relief as claimed below.

### THIRD CLAIM FOR RELIEF
### (Breach of Express Warranty)

63.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

64.     In conjunction with its sale of organic shingle products, the Defendant warranted that it would provide an operational product for a particular warranty period or replace the defective product without paying for the labor costs involved.

65.     Defendant breached the express warranties because, as set forth in detail above, they failed to provide customers with a product that would perform the basic intended and essential functions of organic shingle products for the specified warranty period.

66.     The Defendant has received notice of the breaches of warranty alleged herein, by virtue of complaints made by purchasers of its organic shingle products. Upon information and belief, Defendant has received scores of claims, complaints and other notices from its consumers advising Defendant of the defects in its organic shingle products.

67.     Defendant has failed to provide Plaintiffs or the Class, as a warranty replacement, organic shingle products that conform to the qualities and characteristics that Defendant has expressly warranted are possessed by Defendant's organic shingles.

68.     Despite requests to do so, Defendant refuses to adequately repair or replace its organic shingles in accordance with the stated warranty terms.  As a result, Plaintiffs and members of the Class were forced and continue to be forced to wait for the substantially certain failure of their organic shingle products and suffer the accompanying losses associated therewith.

69.     Further, the warranties themselves are unconscionable and unenforceable in that they fail to achieve their specified purpose because they do not provide consumers with an adequate remedy for the failure of the Defendant's organic shingle products.  The warranties do not provide the means for purchasers to repair and replace either the defective product itself, or structural damages to their homes associated with and caused by these defects.  Applying any warranty limitation to avoid the need to repair the defects set forth herein would be unconscionable in that, *inter alia*, the organic shingle products contain inherent defects that were already existing at the time of purchase and Defendant knew, or was reckless in not knowing, about the defects, which could not be discovered by Plaintiffs and the Class at the time of purchase, and purchasers lacked any meaningful choice with respect to the warranty terms.

70.     As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.


**FOURTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty)**


18

71.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

72.     Defendant designed, developed, tested, manufactured, distributed, marketed, and sold organic shingles for purposes of its eventual sale to end users and installation on homes, offices, buildings, and other structures.

73.     Defendant impliedly warranted that their organic shingles were properly designed, developed, tested, manufactured, distributed, marketed, and sold and that the designs and materials were proper and of first-class and workmanlike quality.

74.     Plaintiffs and the Class relied upon the promises contained within Defendant's warranties and believed that said designs, work, and materials were of first-class workmanlike quality and fit for the intended use and purpose.

75.     Defendant breached said warranty by designing, developing, manufacturing, distributing, marketing, and selling defective organic shingles, which were not of first-class workmanlike quality or fit for the intended use.

76.     Defendant provided a defective product and failed to properly inspect, test, and identify defects with their organic shingles.

77.     But for the Defendant's conduct alleged herein and their breach of implied warranty, the Plaintiffs and the Class would not have suffered the damages and losses alleged herein.

78.     As a direct and proximate result of Defendant's breach of implied warranty, the Plaintiffs and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## FIFTH CLAIM FOR RELIEF

**(Breach of Warranty of Merchantability)**

79.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

80.     Defendant designed, developed, tested, manufactured, distributed, marketed, and sold its organic shingles for purposes of its eventual sale to end users and installation on homes, offices, buildings, and other structures.  Plaintiffs relied on the promises contained within Defendant's warranties that their organic shingles were free from defects.

81.     Defendant knew and/or should have known that their organic shingles were defective and not of acceptable quality as designed and/or that the organic shingles were manufactured with substandard and defective materials.

82.     Defendant knew and/or should have known that their organic shingles were not generally fit for the ordinary purpose for which they were intended to be used as they were designed and manufactured with substandard and defective materials.

83.     Defendant knew and/or should have known that their shingles would reach the end user without substantial change and in the condition in which they were sold.

84.     The Defendant's organic shingles failed in their ordinary and intended use.

85.     But for the Defendant's conduct alleged herein and their breach of warranty of merchantability, the Plaintiffs and the Class would not have suffered the damages and losses alleged herein.

86.     As a direct and proximate result of Defendant's breach of warranty of merchantability, the Plaintiffs and the Class have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## SIXTH CLAIM FOR RELIEF
### (Negligence)

87.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

88.     Defendant owed a duty to Plaintiffs and members of the class to exercise reasonable care in the design, manufacture, quality control and marketing of the organic shingle products.

89.     Defendant breached their duty to Plaintiffs and the Class by designing, manufacturing, selling, advertising and warranting a defective product to Plaintiffs and the Class, and by failing to take those steps necessary to repair or otherwise discontinue selling a defective product to consumers.

90.     Defendant was aware, or reasonably should have been aware, that the organic shingle products were defective and did not perform their intended use.

91.     When they purchased Defendant's organic shingle products, Plaintiffs and the Class were not aware of their defective nature.

92.     As a direct and proximate cause of the foregoing, Plaintiffs and the Class have suffered and will continue to suffer damages and economic loss described fully above, in an amount to be proven at trial.

93.     Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Strict Products Liability Pursuant to Section 402A of the Restatement (Second) of Torts)

94.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

21

95.    At all times during the Class period, Defendant was a commercial manufacturer and supplier of the organic shingle products at issue in this case.

96.    Defendant's organic shingle products were expected to, and did in fact, reach consumers without substantial change in the condition in which they were supplied.

97.    Defendant's organic shingle products were and are defective, and were and are unfit for their intended use.

98.    The organic shingle products fail to perform in accordance with the reasonable expectations of Plaintiffs and the Class and the benefits of the design of the organic shingles does not outweigh the risk of their failure.

99.    Defendant has/had a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of its organic shingle products. Defendant further has/had a duty not to put defective products on the market.

100.    Defendant breached its duty to Plaintiffs and the Class by failing to disclose the defects associated with the organic shingle products, and by allowing the sale and use of the organic shingle products when they knew they would not perform as intended.

101.    As a result of the foregoing, and pursuant to Section 402A of the Restatement (Second) of Torts, Plaintiffs and the Class have suffered damages as previously set forth herein that were directly and proximately caused by the defective organic shingle products.

102.    Plaintiffs and the proposed Class are entitled to damages in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

**(Unjust Enrichment)**

103.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

104.    As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited form the purchase of organic shingle products by Plaintiffs and the Class.

105.    Defendant has voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of their misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness or value that had been represented by Defendant, and that Plaintiffs and the Class, as reasonable consumers, expected.

106.    Defendant has been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiffs and the Class, at the expense of Plaintiffs and the class.

107.    Plaintiffs and the Class seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent and in the amount deemed appropriate by the court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

**NINTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation, Concealment and Failure to Disclose)**

108.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

109.    During the Class period, Defendant knowingly, fraudulently and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of their organic shingles and their warranty process.

110.    Defendant has a duty to disclose to Plaintiffs and the Class members the actual quality of their organic shingle products and the true nature of their warranty process.

111.    The misrepresentations, omissions and concealments complained of herein were material and were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the Class members have been damaged, as alleged herein.

112.    Plaintiffs and Class members reasonably and actually relied upon Defendant's representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Defendant's wrongful conduct.

113.    Based on such reliance, Plaintiffs and Class members purchased organic shingle products from Defendant and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

114.    Had Plaintiffs and the Class been aware of the true nature of Defendant's business practices, they would not have purchased organic shingle products from Defendant.

115.    Defendant's acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice entitling Plaintiffs and the Class to an award of punitive damages to the extent allowed in an amount appropriate to punish or to set an example of Defendant so as to deter future similar conduct on the part of Defendant and others.

116.    Plaintiffs and the Class are entitled to damages and injunctive relief as claimed below.

## TENTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

117.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

118.    During the Class period, Defendant negligently and/or recklessly misrepresented, omitted and concealed from consumers material facts relating to the quality of their organic shingles and their warranty process.

119.    Defendant has a duty to disclose to Plaintiffs and the Class members the actual quality of their organic shingle products and the true nature of their warranties.

120.    The misrepresentations, omissions and concealments complained of herein were negligently or recklessly made to potential customers and the general public on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the Class members have been damaged, as alleged herein.

121.    Plaintiffs and Class members reasonably and actually relied upon Defendant's representations, omissions and concealments.  Such reliance may also be imputed based upon the materiality of Defendant's wrongful conduct.

122.    Based on such reliance, Plaintiffs and Class members purchased organic shingle products from Defendant and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

123.    Had Plaintiffs and the Class been aware of the true nature of Defendant's business practices, they would not have purchased organic shingle products from Defendant.

124.    Defendant's acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice entitling Plaintiffs and Class members to an award of damages to the extent allowed in an amount appropriate to punish or to set an example of Defendant so as to deter future similar conduct on the part of Defendant and others.

125.    Plaintiffs and Class members are entitled to damages and injunctive relief as claimed below.

## ELEVENTH CLAIM FOR RELIEF
### (Declaratory and Injunctive Relief)

126.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

127.    Plaintiffs, on behalf of themselves and putative Class members, seeks a Court declaration of the following:

a.    All Defendant's organic shingles manufactured from 1986 until the present have defects which cause them to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the organic shingles;

b.    All Defendant's organic shingles manufactured from 1986 until the present have a defect in workmanship and material that causes failures;

c.    Defendant knew of the defects in their organic shingles and that the limitations contained in the warranties are unenforceable;

    d.   Defendant shall re-audit and reassess all prior warranty claims on their organic shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

    e.   Defendant shall establish an inspection program and protocol to be communicated to Class members, which will require Defendant to inspect, upon request, a Class member's structure to determine whether an organic shingle failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Defendant as follows:

1.       For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

2.       For restitution;

3.       For actual damages sustained or treble damages;

4.       For damages as otherwise applicable;

5.       For injunctive and declaratory relief, as claimed herein;

6.       For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

7.       For such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

27

DATED:    June 9, 2011
                Burlington, Vermont

Attorneys for Plaintiffs

By_____
      Robert S. Behrens

Law Offices of Robert S. Behrens
90 Main Street
Burlington, VT 05401
T:(802) 658-5900
F:(802) 658-5222

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
507 C Street, N.E.
Washington, D.C. 20002
Telephone:    (202) 789-3960

Jon D. Robinson
Christopher M. Ellis
Bolen Robinson & Ellis, LLP
202 S. Franklin, 2ND Floor,
Decatur, IL 62523
Telephone:    (217) 429-4296

Michael McShane
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA  94105
Telephone:    (415) 568-2555

Robert J. Shelquist
Lockridge, Grindal & Nauen, P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900

Clayton D. Halunen
Halunen & Associates
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

28



Telephone:      (612) 605-4098

Charles Schaffer
Levin Fishbein & Berman
510 Walnut Street - Suite 500
Philadelphia, PA 19106-3697
Telephone:      (215) 592-1500